**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **EARL GALE,** | : | |
| **Plaintiff,** | : | |
| | : | |
| **v.** | : | **CIVIL ACTION NO. 24-CV-6422** |
| | : | |
| **JOSEPH TERRA, *et al.*,** | : | |
| **Defendants.** | : | |

**<u>MEMORANDUM</u>**

**MARSTON, J.**                                                    **February 27, 2025**

Pro se Plaintiff Earl Gale, a male prisoner at SCI Phoenix, filed this civil rights action against several employees of the Pennsylvania Department of Corrections (the "DOC").[1] Each Defendant is named in their individual and official capacities. With his Complaint, Gale sought leave to proceed *in forma pauperis* and requested the appointment of counsel. For the following reasons, the Court grants Gale leave to proceed *in forma pauperis* and after screening, dismisses many of the claims he asserts in the Complaint. Portions of this dismissal are without prejudice, and Gale may either amend his Complaint to cure those deficiencies or proceed without amendment on his Religious Land Use and Institutionalized Persons Act ("RLUIPA")/First Amendment and Fourth Amendment claims. The motion to appoint counsel is granted in a contemporaneously filed order.

---

[1] The named Defendants are Superintendent Joseph Terra; Corrections Officer Sincere Weekely; Prison Rape Elimination Act ("PREA") Lieutenant Patterson (no first name provided); PREA Supervisor Jolene Sokelski; Correctional Classification Program Manager/PREA Manager John Muick; "Deputy Superintendent of Centralize Services" Mandy Sipple; PREA Coordinator/Bureau of Standards Stephen Petersheim; Chief Grievance Officer D. Varner (no first name provided); Chaplaincy Director Reverend Refael Torres; and Religious Services Administrator/Department of Treatment Services Reverend Ulli Klemm. (Doc. No. 3 at 2–4.)

I.    FACTUAL ALLEGATIONS[2]

Gale alleges that on September 16, 2023, when he reported for his shift as a prison barber, he was subject to an improper "cross-gender strip search" by Defendant Officer Weekely,[3] who he alleges is a "female officer posing as a male."  (Doc. No. 3 at 4–5.)  Gale also claims that after the search, Officer Weekely told him, "You have a nice body for an old head."  (*Id*.)

A.    **Complaints about the Strip Search**

Following the search, Gale submitted a grievance through the inmate grievance system, requested an investigation by the prison's PREA department, and sought assistance from officials inside the prison and at the state level.  The Court discusses each complaint in turn.

1.    **Grievance No. 1054561**

On September 29, 2023, Gale submitted a grievance related to the strip search.  (*See* Doc. No. 4 at 1.)  And on October 24, 2023, Defendant Muick, who Gale identifies as a "Correctional Classification Program Manager," denied the grievance because "Officer Weekely is known to the DOC as a male staff member," and "[h]e's authorized to conduct strip searches of inmates."  (*Id*.; *see also* Doc. No. 4 at 2.)  Gale appealed Manager Muick's decision (Doc. No. 4 at 3), and on November 13, 2023, Defendant Superintendent Terra upheld the grievance denial (*see* Doc. No. 4 at 5).  In his response, Superintendent Terra noted that the "PREA department is investigating your allegation and following all required procedures."  (*Id*.)

---

[2] With his Complaint (Doc. No. 3), Gale separately filed several exhibits (Doc. No. 4).  The Court considers these submissions to collectively constitute the operative Complaint for purposes of this Memorandum, and the factual allegations recited here are derived from that Complaint.

[3] The Complaint initially spells this Defendant's name "Weekley" but otherwise refers to the Defendant as "Weekely," so the Court adopts the latter spelling.

Gale then appealed Superintendent Terra's decision to the Secretary for the DOC's Office of Inmate Grievances and Appeals. (Doc. No. 4 at 9–10.) On review, Defendant Chief Grievance Officer Varner found no error, explaining that when "a grievance is filed against a staff member regarding an allegation of a sexual nature . . . the grievance will be immediately forwarded to . . . the PREA Compliance Manager . . . to start an investigation and will not be addressed through the Inmate Grievance System." (*Id.* at 11.) Because Gale's allegations were being investigated by SCI-Phoenix's PREA department, his grievance appeal was dismissed. (*Id.*)

### 2.    PREA Investigation No. 2023-P-1799

As noted above, the cross-gender strip search was also reported to SCI-Phoenix's PREA department.

On October 4, 2023, Defendant Lieutenant Patterson, who Gale identifies as a "PREA Lieutenant," spoke with Gale about the strip search and informed him that "Central Office" would be implementing a new policy permitting cross-gender strip searches on general population inmates. (*See* Doc. No. 3 at 6.)

Later that month, Gale was interviewed by Defendant Sokelski, who he identifies as the "PREA Supervisor," and she advised Gale that the PREA office would only be investigating the allegation that Officer Weekely made an inappropriate comment to him. (*Id.*) The office would not investigate Gale's allegation of an improper cross-gender strip search, "because the officer identifies as a male on h[is] application." (*Id.*)

On June 12, 2024, Supervisor Sokelski again met with Gale to disclose the results of her investigation. (*Id.* at 8; Doc. No. 4 at 12.) She advised him that the investigation found insufficient evidence to determine whether Officer Weekely commented on Gale's body as he alleged, and thus, the allegations were deemed "unsubstantiated." (Doc. No. 3 at 8.)

### 3. __Additional Correspondence__

Gale claims at least two other defendant officials knew about the allegedly improper strip search and failed to take appropriate action.

First, on October 5, 2023, non-party "Barber Instructor" John Wylie emailed an incident report to Defendant Deputy Superintendent Sipple regarding Gale's "well being/emotional state." (*Id.* at 7.) Although Deputy Superintendent Sipple responded that she would look into the matter and seek assistance for Plaintiff, she never followed up. (*Id.*) And according to Gale, he "never received any assistance from the DOC for no mental/emotional" distress allegedly caused by the strip search. (*Id.*)

Second, Gale claims he reported the strip search to the DOC's PREA reporting address via a letter sent on October 5, 2023. (Doc. No. 4 at 6–7.) On November 29, 2023, Defendant PREA Coordinator Petersheim responded, explaining that his office does "not comment on the gender identity status of any staff member," and advising that, regardless, "per an excerpt from a published FAQ to PREA Standard § 115.15, 'it does not violate the PREA standards for a staff member who is a transgender man to conduct strip searches of male inmates.'" (*Id.*) Gale claims that Coordinator Petersheim's response includes "fabricat[ed] official documents of DOC policies and PREA standards" and was sent in "bad faith." (Doc. No. 3 at 7.)

### B. __Accommodation Request for Future Strip Searches__

In addition to his numerous complaints related to the September 16 strip search, Gale also requested an accommodation for future strip searches.

### 1. __Religious Accommodation Request__

Gale submitted a Religious Accommodation Form to Defendant Chaplaincy Director Reverend Torres, "requesting an exemption from future cross-sex and transgender strip searches . . . under the Religious Land Use and Institutionalized Persons Act of 2000

(RLUIPA)." (Doc. No. 4 at 13.) Gale explained that under his religious teachings, he cannot "expose [his] naked body to anyone but [his] wife," nor can he display "the area between [his] naval and knees [to] others, especially the opposite sex." (*Id.*) He then referenced various chapters in the Qur'an. (*Id.*)

On February 1, 2024, non-party Reverend Lugos interviewed Gale on the request of Reverend Torres. (Doc. No. 3 at 8.) At the end of the interview, Reverend Lugos and Reverend Torres, "who was in and out of the interview room," advised Gale that his accommodation form would be reviewed by the "Centralize Service Division of Treatment Services," and that division would contact Gale with its decision. (*Id.*)

On May 24, 2024, Defendant Reverend Klemm, the Religious Services Administrator, denied Gale's accommodation request. (Doc. No. 4 at 14.) Reverend Klemm explained, in a written decision, that Gale's "request to be exempt from being strip-searched by an employee who identifies with the opposite gender is denied for security and safety reasons." (*Id.*)

### 2.    Grievance No. 1091203

Gale submitted a grievance regarding the denial of his religious accommodation request. (Doc. No. 4 at 15–16.) On June 25, 2024, Reverend Torres denied the grievance, finding that Gale's request "clearly does not fall under a religious accommodation," and that "[s]earches are conducted by security within the parameters of security policies, not religious services." (*Id.* at 17.) Gale appealed. (*Id.* at 18–19.) And on July 17, 2024, Superintendent Terra denied the appeal, finding "the grievance officer's response appropriate." (*Id.* at 20.)

As with his prior grievance, Gale appealed Superintendent Terra's decision to the Secretary for the DOC's Office of Inmate Grievances and Appeals. (*Id.* at 21–22.) On September 25, 2024, Chief Grievance Officer Varner found that Gale's religious accommodation

request "was appropriately denied as [the] request does not fall under a religious accommodation." (*Id.* at 23.)

### C.    Procedural History

On December 4, 2024, Gale filed his pro se Complaint (Doc. Nos. 3, 4), motion for leave to proceed *in forma pauperis* (Doc. No. 1), and motion for appointment of counsel (Doc. No. 5) in this Court. Gale asserts claims against the named Defendants under the PREA, the RLUIPA, and 42 U.S.C. § 1983 for violations of the First, Fourth, Fifth, Eighth, and Fourteenth Amendments of the United States Constitution. (Doc. No. 3 at 10–13.)[4] He seeks compensatory damages and injunctive relief, requiring Defendants to (1) grant his requested religious accommodation and (2) "follow PREA directives as to all standards of Equal Protection of Law." (*Id.* at 13–14.)[5]

---

[4] When reciting his claims, Gale invokes several constitutional provisions and statutes, like Title VII of the Civil Rights Act, that he believes were violated by the Defendants' actions and inactions. Many of the provisions to which he refers do not apply or the claim is subsumed in other applicable provisions. Accordingly, the Court has focused its analysis of his constitutional claims on the most applicable constitutional provisions that could give rise to a claim based on the events described in the Complaint. *See Holley v. Dep't of Veteran Affairs*, 165 F.3d 244, 248 (3d Cir. 1999) ("We apply the applicable law, irrespective of whether a pro se litigant has mentioned it by name."). To the extent Gale refers to other provisions he believes have been violated but for which he puts forth no plausible allegations—for example, a Fourteenth Amendment Equal Protection Clause reference when Gale does not allege he was treated differently from other similarly situated inmates due to animus based on a suspect classification, and a Title VII reference when that provision does not apply in the prison context, *see Wilkerson v. Samuels*, 524 F. App'x 776, 779 (3d Cir. 2013)—those provisions do not provide grounds for additional claims based on the facts alleged and are dismissed with prejudice without further discussion.

[5] Gale also requests "declaratory relief, declaring that the acts and omissions of the defendants have violated plaintiff's rights, and stating the defendants' duties with respect to those rights." (Doc. No. 3 at 13.) Declaratory relief is unavailable to adjudicate past conduct, so Gale's request for a declaration that his rights have been violated in the past is improper and is dismissed. *See Corliss v. O'Brien*, 200 F. App'x 80, 84 (3d Cir. 2006) ("Declaratory judgment is inappropriate solely to adjudicate past conduct" and is also not "meant simply to proclaim that one party is liable to another."); *Taggart v. Saltz*, No. 20-3574, 2021 WL 1191628, at *2 (3d Cir. Mar. 30, 2021) (same); *see also Andela v. Admin. Office of U.S. Courts*, 569 F. App'x 80, 83 (3d Cir. 2014) ("Declaratory judgments are meant to define the legal rights and obligations of the parties in the anticipation of some future conduct.").

## II.    MOTION FOR LEAVE TO PROCEED IN FORMA PAUPERIS

Because Gale is unable to pay the filing fee in this matter, the Court grants him leave to proceed *in forma pauperis*.[6]  *See* 28 U.S.C. § 1915(a) (stating that the Court may authorize the commencement of a lawsuit "without prepayment of fees or security" upon a showing that a prisoner is "unable to pay such fees or give security therefor").

## III.    SCREENING UNDER § 1915(E)

Because the Court grants Gale leave to proceed *in forma pauperis*, 28 U.S.C. § 1915(e)(2)(B)(ii) requires the Court to dismiss the Complaint if it fails to state "a claim on which relief may be granted." *See id.* ("Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that—the action or appeal fails to state a claim on which relief may be granted.").

### A.    Legal Standard

In analyzing a complaint under § 1915(e)(2)(B)(ii), we use the same standard applicable to motions to dismiss under Federal Rule of Civil Procedure 12(b)(6).  *See Tourscher v. McCullough*, 184 F.3d 236, 240 (3d Cir. 1999).  So, the Court must determine whether Gale's Complaint contains "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotation marks omitted). Conclusory allegations do not suffice.  *Id.*  However, because Gale is proceeding pro se, we liberally construe the allegations in his Complaint.  *Higgs v. Att'y Gen.*, 655 F.3d 333, 339 (3d Cir. 2011) ("The obligation to liberally construe a *pro se* litigant's pleadings is well-established.").

---

[6] Although the Court grants Gale's motion to proceed *in forma pauperis*, he still must pay the full filing fee in installments.  *See* 28 U.S.C. § 1915(b)(1) (explaining that "if a prisoner brings a civil action or files an appeal in forma pauperis, the prisoner shall be required to pay the full amount of a filing fee" when funds exist).

### B.    Analysis

As noted above, Gale asserts claims against the named Defendants under the PREA; the RLUIPA; and 42 U.S.C. § 1983 for violations of the First, Fourth, Fifth, Eighth, and Fourteenth Amendments of the United States Constitution.  (Doc. No. 3 at 10–13.)  He brings these claims against Defendants in both their official and individual capacities.  (*Id.* at 2–4.)  The Court addresses the official capacity claims to the extent Gale seeks money damages before turning to the remaining claims.

### 1.    Official Capacity Claims for Monetary Damages

Gale asserts claims for money damages against all the named Defendants in their official capacities.  (*Id.*)  The Eleventh Amendment bars suits against a state and its agencies in federal court that seek monetary damages.  *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 99–100 (1984); *A.W. v. Jersey City Public Schs.*, 341 F.3d 234, 238 (3d Cir. 2003).  Suits against state officials acting in their official capacities are really suits against the Commonwealth, and as such, are also barred by the Eleventh Amendment.  *A.W.*, 341 F.3d at 238; *see also Hafer v. Melo*, 502 U.S. 21, 25 (1991); *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 70–71 (1989).  Additionally, the United States Court of Appeals for the Third Circuit has held that, where a claim is filed against state officials who were not directly involved in the activities that caused the alleged constitutional violation but are instead named as defendants because of their positions in state government, they are deemed to be sued in their official capacities and thus entitled to Eleventh Amendment immunity.  *Downey v. Pa. Dep't of Corr.*, 968 F.3d 299, 310 (3d Cir. 2020).  Because the Commonwealth has not waived its Eleventh Amendment immunity for lawsuits filed in federal court, *see* 42 Pa. Cons. Stat. §§ 8521–22, the Court dismisses with prejudice all of Gale's official capacity claims for money damages.

Although Gale's official capacity claims for money damages are dismissed, "claims for prospective injunctive relief to end an ongoing violation of federal law against state officials in their official capacities are not precluded by the Eleventh Amendment." *Heim v. Moore*, Civil No. 3:CV–11–0270, 2012 WL 1118636, at *3 (M.D. Pa. Apr. 3, 2012) (citing *Iles v. de Jongh*, 638 F.3d 169, 177 (3d Cir. 2011)). Accordingly, Gale is not foreclosed from bringing his official capacity claims for injunctive relief against Defendants Terra, Varner, Torres, and Klemm. The Court addresses the viability of these claims below in connection with the discussion of Gale's RLUIPA claims.

### 2.    **PREA Claims**

Turning to the substance of Gale's claims, he brings counts against multiple Defendants for alleged violations of the PREA. "While the PREA was intended in part to increase the accountability of prison officials and to protect the Eighth Amendment rights of Federal, State, and local prisoners, nothing in the language of the statute establishes a private right of action." *See Walsh v. N.J. Dep't of Corr.*, No. 17-2442, 2017 WL 3835666, at *4 (D.N.J. Aug. 31, 2017); *see also Krieg v. Steele*, 599 F. App'x 231, 232 (5th Cir. 2015) (noting that "other courts addressing this issue have found that the PREA does not establish a private cause of action"); *Frederick v. Snyder Cnty. Prison*, No. 18-707, 2019 WL 1348436, at *4 (M.D. Pa. Mar. 22, 2019) (same). Thus, Gale cannot "bring a private action to enforce obligations set forth in the PREA, whether through the statute itself or through [an] attempt to enforce the [institution's] PREA policy via section 1983." *See Bowens v. Emps. of the Dep't of Corr.*, No. 14-2689, 2016 WL 3269580, at *3 (E.D. Pa. June 15, 2016), *aff'd, Bowens v. Wetzel*, 674 F. App'x 133, 137 (3d Cir. 2017). Accordingly, any claims premised upon violations of the PREA are dismissed with prejudice as a matter of law.

3.    **RLUIPA Claims**

Next, the Court addresses Gale's claims for violations of the RLUIPA against Defendants Terra, Varner, Torres, and Klemm.  That Act provides inmates with heightened religious protection when compared to their rights under the First Amendment's Free Exercise Clause. *See, e.g.*, *Holt v. Hobbs*, 574 U.S. 352, 356 (2015) ("Congress enacted RLUIPA . . . 'in order to provide very broad protection for religious liberty.'" (quoting *Burwell v. Hobby Lobby Stores, Inc.*, 573 U.S. 682, 693 (2014))); *Shelley v. Metzger*, 832 F. App'x 102, 105 (3d Cir. 2022) ("Compared to the First Amendment, RLUIPA tends to provide a greater level of protection for a prisoner's religious liberty."); *Smith v. Yuba Cnty. Sheriff Dep't*, No. 19-1765, 2020 WL 4339472, at *6 (E.D. Cal. July 28, 2020) (noting lower threshold for showing a RLUIPA versus a First Amendment free exercise claim).

The relevant portion of the RLUIPA "states that '[n]o government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution . . . even if the burden results from a rule of general applicability,' unless the government demonstrates that the burden is 'in furtherance of a compelling governmental interest" and is 'the least restrictive means of furthering that . . . interest.'" *Washington v. Klem*, 497 F.3d 272, 277 (3d Cir. 2007) (quoting 42 U.S.C. § 2000cc-1(a)).  Under the RLUIPA, "a substantial burden exists where:  [1] a follower is forced to choose between following the precepts of his religion and forfeiting benefits otherwise generally available to other inmates versus abandoning one of the precepts of his religion in order to receive a benefit; or [2] the government puts substantial pressure on an adherent to substantially modify his behavior and to violate his beliefs." *Id.* at 280.

The RLUIPA does not provide a basis for claims against government officials in their individual capacities, *Sharp v. Johnson*, 669 F.3d 144, 154 (3d Cir. 2012), so Gale's individual

capacity RLUIPA claims are dismissed with prejudice.  Gale may, however, seek injunctive

relief under the RLUIPA against government officials sued in their official capacities.  Such

claims are typically not appropriate for dismissal on statutory screening, however, because "[t]he

feasibility of a religious accommodation usually is a fact-intensive inquiry."  *See Robinson v.*

*Superintendent Houtzdale SCI*, 693 F. App'x 111, 117 (3d Cir. 2017).  We also note that at least

one circuit court has found injunctive relief appropriate in a case involving facts similar to those

presented here.  *See West v. Radtke*, 48 F.4th 836, 843–53 (7th Cir. 2022) (holding male prisoner

was entitled to injunctive relief on RLUIPA claim premised on transgender male officer

observing strip search of the prisoner); *see also, generally*, *West v. Kind*, Case No. 17-cv-482-pp,

2024 WL 2830746 (E.D. Wis. June 4, 2024).  Accordingly, the Court declines to dismiss Gale's

RLUIPA claims for injunctive relief against Defendants Terra, Varner, Torres, and Klemm in

their official capacities.

### 4.    Constitutional Claims

Last, Gale brings constitutional claims against Defendants pursuant to 42 U.S.C. § 1983.

That section provides in part:

> Every person who, under color of any statute, ordinance, regulation, custom, or
> usage, of any State or Territory or the District of Columbia, subjects, or causes
> to be subjected, any citizen of the United States or other person within the
> jurisdiction thereof to the deprivation of any rights, privileges, or immunities
> secured by the Constitution and laws, shall be liable to the party injured in an
> action at law, suit in equity, or other proper proceeding for redress . . . .

42 U.S.C. § 1983.  "To state a claim under § 1983, a plaintiff must allege the violation of a right

secured by the Constitution and laws of the United States, and must show that the alleged

deprivation was committed by a person acting under color of state law."  *West v. Atkins*, 487 U.S.

42, 48 (1988).  As noted earlier, Gale's claims are premised on violations of the First, Fourth,

Fifth, Eighth, and Fourteenth Amendments of the United States Constitution. (Doc. No. 3 at 10–13.)

### a.    *Supervisory Claims for All Constitutional Violations*

Many of Gale's constitutional claims are based on the Defendants' supervisory positions or their roles in the grievance process. For the following reasons, these claims fail.

### i.    Claims based on Role as Supervisor

Gale appears to assert that Superintendent Terra and Deputy Superintendent Sipple are responsible for the constitutional violations he suffered based in part on their supervisory roles at SCI-Phoenix. But liability under § 1983 cannot be predicated on a *respondeat superior* basis. *Chavarriaga v. N.J. Dep't of Corr.*, 806 F.3d 210, 227 (3d Cir. 2015); *Robinson v. Delbalso*, No. 22-2378, slip op. at 3–4 (3d. Cir. Nov. 28, 2022). And generalized allegations that a supervisory defendant is "in charge of" or "responsible for" an office or facility are insufficient to allege personal involvement in an underlying constitutional violation. *See Saisi v. Murray*, 822 F. App'x 47, 48 (3d Cir. 2020) ("Saisi asserted that some defendants were 'in charge of agencies that allowed this to happen,' and that liability stemmed merely from defendants' 'belief' that their conduct would be 'tolerated.' However, a director cannot be held liable 'simply because of his position as the head of the [agency].'" (quoting *Evancho v. Fisher*, 423 F.3d 347, 354 (3d Cir. 2005)).

Instead, there are "two general ways in which a supervisor-defendant may be liable for unconstitutional acts undertaken by subordinates." *Barkes v. First Corr. Med., Inc.*, 766 F.3d 307, 316 (3d Cir. 2014), *reversed on other grounds by Taylor v. Barkes*, 575 U.S. 822 (2015). First, a supervisor may be liable if he or she "with deliberate indifference to the consequences, established and maintained a policy, practice or custom which directly caused [the] constitutional harm." *Id.* (quoting *A.M. ex rel. J.M.K. v. Luzerne Cnty. Juvenile Det. Ctr.*, 372 F.3d 572, 586

(3d Cir. 2004) (alteration in original)).  "Second, a supervisor may be personally liable under § 1983 if he or she participated in violating the plaintiff's rights, directed others to violate them, or, as the person in charge, had knowledge of and acquiesced in the subordinate's unconstitutional conduct."  *Chavarriaga*, 806 F.3d at 227.

Gale does not allege that either Superintendent Terra or Deputy Superintendent Sipple instituted a policy, practice, or custom that directly caused the harm he suffered, nor does he allege that either Defendant was personally involved in the underlying harm resulting from the alleged cross-gender strip search.  (*See* Doc. No. 3 at ¶¶ 88, 92.)  He alleges only that they bore overall responsibility for him and the facility, which is insufficient to establish liability.  Accordingly, Gale's claims based on Terra and Sipple's roles as supervisors are not plausible and are dismissed without prejudice.

ii.      Claims Based on Handling of Grievances

In the same vein, Gale asserts claims against several Defendants, including Defendants Terra, Muick, Varner, Patterson, Sokelski, Petersheim, and Torres, based on their involvement in the processing of his grievances and PREA complaint.

Claims based on the handling of prison grievances fail because "prisoners do not have a constitutional right to prison grievance procedures."  *Gerholt v. Wetzel*, 858 F. App'x 32, 34 (3d Cir. 2021) (citing *Massey v. Helman*, 259 F.3d 641, 647 (7th Cir. 2001) and *Flick v. Alba*, 932 F.2d 728, 729 (8th Cir. 1991)).  Accordingly, allegations such as those raised by Gale, which are predicated on failures of the grievance process or improper handling of or response to grievances, do not give rise to a constitutional claim.  *See Woods v. First Corr. Med. Inc.*, 446 F. App'x 400, 403 (3d Cir. 2011) ("We agree with the District Court that because a prisoner has no free-standing constitutional right to an effective grievance process, Woods cannot maintain a constitutional claim against Lucas based upon his perception that she ignored and/or failed to

properly investigate his grievances." (internal citation omitted)); *Burnside v. Moser*, 138 F.

App'x 414, 416 (3d Cir. 2005) (explaining that "[i]nmates do not have a constitutionally

protected right to the prison grievance process" and that "a state grievance procedure does not

confer any substantive constitutional right upon prison inmates" (internal quotations and

citations omitted)).

For this reason, a prison official's involvement in the handling of a grievance or PREA

complaint, alone, is not actionable under § 1983.  *See Curtis v. Wetzel*, 763 F. App'x 259, 263

(3d Cir. 2019) ("The District Court properly determined that Defendants [Superintendent]

Wenerowicz, Lewis, and Shaylor—who participated only in the denial of Curtis' grievances—

lacked the requisite personal involvement [in the conduct at issue].");  *Folk v. Prime Care Med.*,

741 F. App'x 47, 51 (3d Cir. 2018) ("Although some of these defendants were apparently

involved in responding to some of Folk's prison grievances, there are no allegations linking them

to the underlying incidents and thus no basis for liability based on those later grievance

reviews.");  *Nelson v. E. Jersey State Prison*, Civil Action No. 23-20944 (JXN) (JBC), 2024 WL

2130813, at *4 (D.N.J. May 13, 2024) ("While Plaintiff alleges that she filed a grievance and

made a PREA report, allegations that grievances were sent to an administrator are generally

insufficient to establish supervisory liability, absent a plausible allegation that the supervisor had

contemporaneous knowledge of the incident and either directed or acquiesced in it.").

Accordingly, Gale's claims against Defendants Terra, Muick, Varner, Patterson,

Sokelski, Petersheim, and Torres, to the extent they are based solely on each individual's

involvement in the processing of Gale's grievances or PREA complaints, rather than on the

underlying incidents, are not plausible and are dismissed with prejudice.  *See Hidalgo v. Pa.*

*Dep't. of Corrs.*, Civil Action No. 15-203ERIE, 2017 WL 85448, at *7 (W.D. Pa. Jan. 10, 2017)

("Plaintiff has not sufficiently alleged that the remaining individual Defendants personally violated Hidalgo's federal-based rights because their alleged involvement extended no further than evaluating his prison grievance. Ireland, Overmeyer, Klemm, and Varner are not personally involved because they denied Hidalgo's prison grievance or grievance appeal.").

> b.    *Claims Based on Violation of DOC Policies for All Constitutional Violations*

Gale claims numerous Defendants violated his constitutional rights by failing to comply with various policies promulgated by the DOC. However, the Third Circuit has been clear that "alleged violations of departmental policies do not, in and of themselves, give rise to independent causes of action" for constitutional claims. *Williams v. Pa. Dep't of Corr.*, CIVIL ACTION NO. 3:18-cv-1150, 2019 WL 1434670, at *5 (M.D. Pa. Jan. 24, 2019), *report and recommendation adopted in part, rejected in part*, No. 18-1150, 2019 WL 1429349 (M.D. Pa. Mar. 29, 2019); *see also Whitcraft v. Township of Cherry Hill*, 974 F. Supp. 392, 398 (D.N.J. 1996) ("[A] police department's deviation from an internal guideline does not itself trigger a violation of constitutional dimension."). Thus, Gale's claims based solely on any Defendant's failure to follow DOC policies are not plausible and are dismissed with prejudice.

> c.    *First Amendment Free Exercise Claims*

Gale asserts First Amendment free exercise claims against Reverends Torres and Klemm based on the denial of his request for a religious accommodation.

The United States "Supreme Court has made clear that 'convicted prisoners do not forfeit all constitutional protections by reason of their conviction and confinement in prison.'" *DeHart v. Horn*, 227, F.3d 47, 50 (3d Cir. 2000) (quoting *Bell v. Wolfish*, 441 U.S. 520, 545 (1979)). These protections include the First Amendment right to exercise the religion of one's choice. *Id.* at 50–51; *see also* U.S. Const. amend. I ("Congress shall make no law respecting an

establishment of religion, or prohibiting the free exercise thereof . . . .").  "Nevertheless, the fact of incarceration and the valid penological objectives of deterrence of crime, rehabilitation of prisoners, and institutional security justify limitations on the exercise of constitutional rights by inmates."  *Dehart*, 227 F.3d at 50–51.  Accordingly, "when a prison regulation impinges on inmates' constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests."  *Id.* at 51 (quoting *Turner v. Safley*, 482 U.S. 78, 89 (1987)) (discussing four factors that courts apply to determine the reasonableness of the government regulation).

Here, Gale lumps his First Amendment claims together with the RLUIPA claims discussed above, making it difficult to discern the exact contours of Gale's First Amendment allegations.  (*See* Doc. No. 3 at 13 ("defendant violated plaintiff's constitutional rights of First Amendment (RLUIPA)").)  Nevertheless, Gale's religious accommodation request, which he attaches as an exhibit to his Complaint, suggests Gale is a practicing Muslim and that the prison's current strip search policy would violate his religion's prohibition on exposing his "naked body to anyone but [his] wife," and on displaying "the area between [his] naval and knees [to] others, especially the opposite sex."  (Doc. No. 4 at 13); *see also Hertel v. Thronell*, 2024 WL 3236828, at *15 (D. Ariz. Apr. 9, 2024) ("To implicate the Free Exercise Clause, a prisoner must show that the belief at issue is both 'sincerely held' and 'rooted in religious belief.'"  (quoting *Malik v. Brown*, 16 F.3d 330, 333 (9th Cir. 1994))).  Reverend Klemm's denial of his accommodation request states it was denied "for security and safety reasons."  (Doc. No. 4 at 14.)  Although this may be sufficient for the imposition to ultimately withstand constitutional scrutiny, the Court cannot find at this early stage that Gale's First Amendment claims fail as a matter of law.  *See Jeffers v. Walton*, 2019 WL 6307232, at *1 (N.D. Ind. Nov. 22, 2019) (finding the plaintiff stated a plausible First Amendment claim where he alleged that

the defendant chaplain denied his request to eat only at certain times during Ramadan); *cf. Scott v. Erdogan*, 2014 WL 13130474, at * 9 (M.D. Pa. Jan. 22, 2014) (finding the "application of the four *Turner* factors to Plaintiff's free exercise of religion claim to be premature and to be more appropriate at the summary judgment stage of this case").  Accordingly, they will be served for a responsive pleading.

d.    *Fourth Amendment Claim for Violation of Privacy*

Next, Gale asserts a Fourth Amendment "privacy" claim against Officer Weekley for his role in the September 16 cross-gender strip search.[7]  The Fourth Amendment to the United States Constitution, as incorporated to the states through the Fourteenth Amendment, protects "[t]he right of the people to be secure in their persons . . . against unreasonable searches and seizures." U.S. Const. amend. IV.  The United States Supreme Court has held that inmates do not have a Fourth Amendment right to be free of strip searches in all circumstances.  *See Bell v. Wolfish*, 441 U.S. 520 (1979).  Instead, the Fourth Amendment "grants inmates a limited right of bodily privacy, subject to reasonable intrusions necessitated by the prison setting."  *Parkell v. Danberg*,

---

[7] Although Gale contends that Officer Weekley's conduct violates a slew of constitutional provisions, a prisoner's challenge to a strip search is properly analyzed under the Fourth and/or Eighth Amendments.  *See, e.g.*, *Allemandi v. Munoz*, Civ. No. 17–1432–LPS, 2018 WL 716986, at *6 (D. Del. Feb. 5, 2018) ("A prisoner's challenge to a strip search may be cognizable under 42 U.S.C. § 1983 through the Fourth or Eighth Amendments."); *see also Miller v. Mellon Long Term Disability Plan*, 721 F. Supp. 2d 415, 422–223 (W.D.Pa.2010) (noting that courts must look past "labels attached to a claim by a plaintiff").  "To raise a Fourth Amendment claim, the prisoner must allege that the strip search was unreasonable."  *Allemandi*, 2018 WL 716986, at *6; *see also Bell*, 441 U.S. at 558–59 (evaluating the reasonableness of strip searches under the Fourth Amendment).  That is the claim that Gale brings here. By contrast, "[w]here a prisoner alleges that the strip search was conducted in a physically abusive manner, the Eighth Amendment applies."  *Allemandi*, 2018 WL 716986, at *6; *see also, e.g.*, *Farmer v. Plumeri*, Civ. No. 22-957 (FLW)(LHG), 2023 WL 35869, at *2–3 (D.N.J. Jan. 4, 2023).  Although Gale asserts that Defendant Weekely made an improper comment to him after the search, verbal sexual harassment does not establish an Eighth Amendment violation.  *See DeWalt v. Carter*, 224 F.3d 607, 612 (7th Cir. 2000) (mere verbal sexual harassment without accompanying physical contact is not enough to state a claim for Eighth Amendment violation); *see also Chambliss v. Jones*, Civil Action No. 3:14–2435, 2015 WL 328064, at *3 (M.D. Pa. Jan. 26, 2015) (finding that "sexual comments and gestures," without allegations of physical contact or pain, did not rise to the level of an Eighth Amendment violation). Accordingly, the Court considers this claim as arising under only the Fourth Amendment.

833 F.3d 313, 324–25 (3d Cir. 2016).  In *Parkell*, the Third Circuit emphasized that, although the Fourth Amendment "applies to bodily searches in prison," the "contours of prisoners' Fourth Amendment rights" are "very narrow."  *Id.* at 326.  And application of the Fourth Amendment in this context "requires a balancing of the need for the particular search against the invasion of personal rights that the search entails."  *See id.* (quoting *Bell*, 441 U.S. at 559); *see also Bell*, 441 U.S. at 559 ("Court must consider the scope of the particular intrusion, the manner in which it is conducted, the justification for initiating it, and the place in which it is conducted.").

"[W]hile all forced observations or inspections of the naked body implicate a privacy concern, it is generally considered a greater invasion to have one's naked body viewed by a member of the opposite sex."  *Harris v. Miller*, 818 F.3d 49, 59 (2d Cir. 2016) (internal citation omitted); *see also Byrd v. Maricopa Cnty. Sheriff's Dep't*, 629 F.3d 1135, 1141 n.6 (9th Cir. 2011) ("We approach this issue by reiterating our longstanding recognition that '[t]he desire to shield one's unclothed figure from [the] view of strangers, and particularly strangers of the opposite sex, is impelled by elementary self-respect and personal dignity.'" (quoting *York v. Story*, 324 F.2d 450, 455 (9th Cir. 1963))); *Griffith v. El Paso County*, __ F.4th __, 2025 WL 545251, at *22 (10th Cir. Feb. 19, 2025) ("[T]here are serious privacy concerns when prison officials view, or search, undressed inmates of the opposite gender.").  For this reason, "[c]ourts throughout the country have universally frowned upon cross-gender strip searches in the absence of an emergency or exigent circumstances."  *Byrd*, 629 F.3d at 1143; *see also Lee v. Downs*, 641 F.2d 1117, 1119 (4th Cir. 1981) ("Most people, however, have a special sense of privacy in their genitals, and involuntary exposure of them in the presence of people of the other sex may be especially demeaning and humiliating.  When not reasonably necessary, that sort of degradation is not to be visited upon those confined in our prisons."); *Fortner v. Thomas*, 983 F.2d 1024,

1030 (11th Cir. 1993) (citing *Lee* and "join[ing] other circuits in recognizing a prisoner's constitutional right to bodily privacy"). Although courts generally agree on this issue, the "Fourth Amendment analysis of a strip search" remains "fact-specific," and every case must be measured "in objective terms by examining the totality of the circumstances." *Griffith*, 2025 WL 545251, at \*22; *see also Bell*, 441 U.S. at 559; *Parkell*, 833 F.3d at 326.

Here, Gale, a male prisoner, asserts that Defendant Weekely, an allegedly transgender male officer, violated Gale's Fourth Amendment rights when he conducted a routine strip search of Gale. Given the fact-specific nature of the inquiry, and the developing nature of the case law in this area, the Court declines to dismiss this claim on statutory screening. *See West*, 48 F.4th at 852–53 (reviving Fourth Amendment claim—dismissed on screening—where male prisoner claimed he was unreasonably strip searched by transgender male guard); *Griffith*, 2025 WL 545251, at \*22–24 (weighing the *Bell* factors and finding that the plaintiff prisoner "plausibly alleged facts from which we can infer, in *this* case, that a male deputy's participation in the strip search of a transgender female detainee had no 'reasonable relationship' to a 'legitimate governmental objective,'" but nevertheless granting the officer qualified immunity because the law was not clearly established at the time of the search (citation omitted)); *cf. Carter-el v. Boyer*, 1:19cv243 (TSE/MSN), 2020 WL 939289, at \*4 (E.D. Va. Feb. 25, 2020) ("Although there is a robust body of case law analyzing the constitutional bounds of strip searches and cross-gender searches in prison, little if any case law addresses the issue of the propriety of cross-gender searches of transgender inmates."). Accordingly, Gale's Fourth Amendment claim will be served for a responsive pleading.

    *e.*  *Eighth Amendment Claim for Deliberate Indifference*

Next, Gale alleges that Deputy Superintendent Sipple violated his rights when she failed to investigate a report she received from Barber Instructor John Wylie about Gale's "well

being/emotional state." (Doc. No. 3 at 7.) He argues that Sipple's actions amount to a "bad faith disregard[ ]" of his "well-being." (*Id.*) The Court interprets this as a claim for deliberate indifference to medical needs under the Eighth Amendment.[8]

The Eighth Amendment to the United States Constitution, as incorporated to the states through the Fourteenth Amendment, prohibits the infliction of "cruel and unusual punishments." U.S. Const. amend. VIII. This Amendment "proscribes more than physically barbarous punishments"; it also "embodies broad and idealistic concepts of dignity, civilized standards, humanity, and decency." *Estelle v. Gamble*, 429 U.S. 97, 102 (1976) (quotation marks omitted). In *Estelle*, the United States Supreme Court extended the Amendment's reach to "establish the government's obligation to provide medical care for those whom it is punishing by incarceration." *Id.* To state an Eighth Amendment claim for failure to provide appropriate medical care, an inmate must allege both "(1) a serious medical need; and (2) behavior on the part of prison officials constituting deliberate indifference to that need." *Happel*, 2024 WL 1508561, at *10 (citing *Estelle*, 429 U.S. at 106).

A "medical need is serious, . . . if it is one that has been diagnosed by a physician as requiring treatment or one that is so obvious that a lay person would easily recognize the necessity for a doctor's attention." *Monmouth Cnty. Corr. Institutional Inmates v. Lanzaro*, 834 F.2d 326, 347 (3d Cir. 1987) (internal quotation marks omitted). "The seriousness of an inmate's medical need may also be determined by reference to the effect of denying treatment." *Id.* When a denial or delay of adequate care results in the "unnecessary and wanton infliction of

---

[8] To the extent Gale attempts to bring a stand-alone claim against Deputy Superintendent Sipple for failing to investigate the issue, that claim fails. "[A]n allegation of a failure to investigate, without another recognizable constitutional right, is not sufficient to sustain a section 1983 claim." *Graw v. Fantasky*, 68 F. App'x 378, 383 (3d Cir. 2003) (quotations omitted).

pain," *id.* (quoting *Estelle*, 429 U.S. at 103), or "causes an inmate to suffer a life-long handicap or permanent loss, the medical need is considered serious," *id.* Here, Gale does not allege that he has been diagnosed with a condition or that Deputy Superintendent Sipple's actions caused him to suffer a "permanent loss." To the contrary, he states that after the strip search and comment by Officer Weekely, Gale "brushed off the comment as something stupid." (Doc. No. 3 at 5.) The fact that another officer vaguely mentioned Gale's "well being/emotional state" to Deputy Superintendent Sipple, without more, is not enough to state a claim for deliberate indifference. Accordingly, this claim is also dismissed without prejudice.

### f.      Fourteenth Amendment Due Process Claims

Finally, Gale appears to have asserted stand-alone due process claims under the Fourteenth Amendment that are indistinct from the more specific claims analyzed above.[9] "Where a particular Amendment provides an explicit textual source of constitutional protection against a particular sort of government behavior, that Amendment, not the more generalized notion of substantive due process, must be the guide for analyzing these claims." *Albright v. Oliver*, 510 U.S. 266, 273 (1994). Accordingly, Gale's stand-alone substantive due process claims are dismissed with prejudice. His Fourteenth Amendment claims survive only to the extent his other claims—which allege violations of the more specific prohibitions discussed in the Bill of Rights and are actionable against state actors through the Fourteenth Amendment— survive.

---

[9] Gale also references the Fifth Amendment's Due Process Clause, but that Clause applies to federal officials, not state officials. *See, e.g.*, *Bergdoll v. City of York*, 515 F. App'x 165, 170 (3d Cir. 2013) ("As the District Court noted, [the plaintiff's] Fifth Amendment claim fails because the Due Process Clause of the Fifth Amendment only applies to federal officials, and [the defendant] is a state official.").

## IV.   CONCLUSION

For the reasons discussed above, the following claims may proceed:  (1) Gale's RLUIPA claims seeking injunctive relief against Defendants Terra, Varner, Torres, and Klemm in their official capacities, (2) Gale's First and Fourteenth Amendment free exercise claims against Defendants Torres and Klemm, and (3) Gale's Fourth and Fourteenth Amendment strip search claim against Defendant Weekely.  The following claims are dismissed with prejudice:  (1) Gale's official capacity claims for money damages, (2) Gale's claims based on violations of the PREA, (3) Gale's individual capacity claims premised on the handling of his grievances and PREA complaint, (4) his constitutional claims to the extent they are premised on violations of DOC policy, (5) his Fourteenth Amendment Equal Protection Clause and stand-alone due process claims, and (6) his Title VII claims.[10]  Gale will be afforded an opportunity to file an amended complaint if he is capable of correcting the defects the Court has identified in his supervisory liability and Eighth Amendment claims.  An appropriate order with additional information about amendment will be entered separately.

---

[10] The Order that will be entered will direct the Clerk of Court to terminate the following Defendants who are only involved with the claims that are dismissed with prejudice:  Lieutenant Patterson, Jolene Sokelski, John Muick, Stephen Petersheim, and D. Varner.